## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MOHAMMED Z. RAHMAN, et al. | : | |
| *Plaintiffs* | : | |
| | : | Case No. 19-cv-3250-JMY |
| vs. | : | |
| | : | |
| BOROUGH of GLENOLDEN, et al. | : | |
| *Defendants*. | : | |

### MEMORANDUM

**YOUNGE, J.**                                                                 **APRIL 6, 2020**

Plaintiffs bring this action as a facial and as an applied challenge to Glenolden Borough Municipal Code and Ordinance § 61 (hereinafter Chapter 61). They argue that it conflicts with the Municipal Code and Ordinance Compliance Act of Pennsylvania (MCOC Act), 68 Pa. C.S. § 1082.1, *et seq.*[1]

Before the Court are Plaintiffs' Motion for Preliminary Injunction (ECF No. 17), Plaintiffs' Motion for Expedited Discovery (ECF No. 21), and Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 33.) The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, Defendants' Motion to Dismiss will be granted in part and denied in part. The Plaintiffs' Motion for Preliminary Injunction and Motion for Expedited Discovery will be denied as moot based on the resolution of Defendants' Motion to Dismiss.

---

[1] The MCOC Act was enacted on January 3, 2017. Two years later, on November 19, 2019, the Borough of Glenolden enacted Ordinance No. 2131-2019 to bring Chapter 61 into compliance with the MCOC Act. The Plaintiffs argue that Chapter 61 as amended still fails to comply with the MCOC Act.

## I. BACKGROUND

### A. <u>Facts</u>

Prior to being amended, Chapter 61-2 required sellers of real estate to obtain a use and occupancy permit prior to selling property located within the boundaries of Glenolden. (Amended Complaint, ECF No. 31 ¶ 25.) Chapter 61-3 further required that county officials withhold issuance of a use and occupancy permit when certain code violations were found to exist; such as, damage to public sidewalks and public curbing abutting the dwelling. (*Id.* ¶ 23.) If code violations were found, the code inspector could refuse to issue a use and occupancy permit, thereby blocking the sale. (*Id.* ¶ 30.) Under Chapter 61, a code inspector could also require the seller to post a bond in escrow pending repair of the property within established time limits following sale. (*Id.* ¶¶ 33, 34.) Several of the relevant portions of former Chapter 61 read as follows:

> [n]o person owning, managing, conducting and/or operating a dwelling shall sell same without first obtaining a certificate of occupancy from the Housing Officer of the Borough of Glenolden and/or his agent or agents.

Chapter 61-2 (Certificate Required for Sale).

The Ordinance further required that:

> [p]rior to the issuance of a certificate of occupancy for the sale of a dwelling and in addition to any other requirements for the issuance thereof, the public sidewalks and the public curbing abutting the dwelling to be sold and the entranceways and the steps thereon leadings up to and into the dwelling to be sold must be in good repair and must meet the minimum requirements of the Building Code of the Borough of Glenolden and of any other codes and ordinance relative thereto.

Chapter 61-3 (Certificate Required for Sale).

Chapter 61 also established penalties for failure to comply with the certificate of occupancy requirements:

Any person who shall violate any provision of this article shall, upon conviction thereof, be punished by a fine of not more than $600 and costs of prosecution or, upon the default of the payment of such fine and costs, by imprisonment in the county jail for a term of not more than 30 days. Each day's failure to comply with any provision of this article shall constitute a separate violation thereof.

Chapter 61-4 (Certificate Required for Sale).

On January 3, 2017, the Pennsylvania Legislature enacted the MCOC Act to establish consistent procedures for the transfer of real estate across the state of Pennsylvania as well as prevent the arbitrary enforcement of ordinances similar to Chapter 61. (Amended Complaint ¶ 18.) The MCOC Act reads in relevant part:

(a) General rule. — A municipality requiring a use and occupancy certificate shall issue the certificate in the following manner:
(1) If the municipal inspection reveals no violations.
(2) If the municipal inspection reveals at least one violation, but no substantial violations, the municipality shall issue a temporary use and occupancy certificate.
(3) If the municipal inspection reveals at least one substantial violation, the municipality shall specifically note those items on the inspection report and shall issue a temporary access certificate.

(b) Escrows and bonds prohibited. — A municipality may not require the escrowing of funds or posting of a bond, or impose any similar financial security as a condition of issuing a certificate.

68 Pa. C.S. §1082.1 (Issuance of Use and Occupancy Certificate).

The MCOC Act defines a "substantial violation" as follows:

"Substantial violation." A violation of an adopted building, housing, property maintenance or fire code or maintenance, health or safety nuisance ordinance that makes a building, structure or any part thereof unfit for human habitation and is discovered during the course of a municipal inspection of a property and disclosed to the record owner or prospective purchaser of the property through issuance of a municipal report.

68 Pa. C.S. § 1082 (Definitions).

In other words, unless a municipality has determined that a property is "unfit for human habitation," it must issue a temporary use and occupancy permit that allows a real estate

transaction to go to closing. 68 Pa. C.S. §1082 & 1082.1. The MCOC Act also prohibits local townships from requiring that sellers place money in escrow. 68 Pa. C.S. § 1082.1(b).

In November of 2019, two years after the enactment of the MCOC Act, the Borough of Glenolden approved ordinance No. 2131-2019 to amend Chapter 61 and bring it into compliance with the MCOC Act. Defendants allege that Chapter 61 as amended by ordinance No. 2131-2019 complies with the mandates of the MCOC Act. In their response to Defendants' motion to dismiss, Plaintiffs dispute this contention and argue that Chapter 61 as amended still fails to comply with the MCOC Act. However, this contention is not averred in the Amended Complaint that was filed on October 24, 2019 prior to the enactment of ordinance No. 2131-2019 in November of 2019.

### Application of Chapter 61 to Rahman

Rahman avers that he was penalized under Chapter 61 for the sale of a property located in the Borough of Glenolden at 419 W. South Avenue, Glenolden, Pennsylvania 19036. (Amended Complaint ¶ 39-43.) He avers that 419 W. South Avenue was inspected in connection with an agreement of sale that he entered into on February 7, 2019, and that the inspector for Glenolden Township found two violations. (*Id.* ¶¶ 39-44.) He further avers that he was permitted to sell the property; however, he was required to post a $5,000.00 bond in escrow pending repair to the subject property. (*Id.* ¶ 44.) Rahman made the required repairs and the escrowed monies were returned. (*Id.* ¶ 45.) Rahman avers that five separate criminal citations were then issued against him for failure to obtain a use and occupancy permit in connection with the sale of 419 W. South Avenue. (*Id.* ¶ 46; *Commonwealth of Pa. v. Rahman*, MJ-32242-NT-0000189-2019 through MJ-32242-NT-0000193-2019.) Rahman pled not guilty to the criminal charges that are currently

pending against him in Magisterial District Court in Glenolden Borough.  (*Id.* ¶ 50.)  Rahman currently owns another property in Glenolden Township.  (*Id.* ¶ 55.)

### B.  Procedural History

Plaintiffs filed their original complaint in this matter on July 24, 2019.  (Complaint, ECF No. 1.)  Defendants filed their first Motion to Dismiss for Failure to State a Claim on September 27, 2019.  (ECF No. 16.)  On the same day, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction.  (ECF No. 17.)  This Court denied Plaintiffs' Motion for Temporary Restraining Order and set a hearing date for Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 20.)  In preparation for the hearing set by this Court, Plaintiffs filed a Motion for Discovery.  (ECF No. 21.)  This Court then entered an Order staying the hearing on the Motion for a Preliminary Injunction based on an agreement reached between the parties to abstain from prosecuting Rahman until after this Court disposed of the pending Motion to Dismiss.  (ECF No. 27.)

On October 29, 2019, Plaintiffs filed an Amended Complaint (ECF No. 31) which effectively rendered moot the outstanding Motion to Dismiss.  On November 8, 2019, Defendants filed a renewed Motion to Dismiss for Failure to State a Claim (ECF No. 35) which is currently before this Court for disposition.

Plaintiffs bring this action as a facial and an as applied challenge to Chapter 61. (Amended Complaint ¶ 1.)  Chapter 61 relates to real estate transactions, and the sale of real estate within the boundaries of Glenolden Borough.  (*Id.* ¶ 71-73.)  At issue is an alleged conflict between Chapter 61 and the MCOC Act, 68 Pa. C.S. 1082.1, *et seq*.  (*Id.*)  The Plaintiffs challenge the mandates of Chapter 61 based on the enactment of the MCOC Act.  (*Id.*)  Plaintiffs bring suit against: Borough of Glenolden; President of Glenolden Borough, Kenneth Pfaff; Vice-

President of Glenolden Borough, James Boothby; Borough Manager of Glenolden Borough, Brian Razzi; and Chief of Code Enforcement for Glenolden Borough, Anthony Tartaglia.

In their Amended Complaint, the Plaintiffs proceed on seven theories as follows: Count I - Declaratory Judgment, 28 U.S.C. §2201; Count II - Injunctive Relief; Count III - Violation of 42 U.S.C. § 1983; Count IV – Preemption; Count V - Attorney's Fees; Count VI - Interference with Contractual Relationship; Count VII - Conspiracy – Violations of 42 U.S.C. § 1985 & Pennsylvania Common Law. (Amended Complaint.)

Proceeding on these seven theories, the Plaintiffs request relief in the form of:

a. A declaration that Ordinance § 61-1 through § 61-4, as amended and codified at Chapter 61 of the Glenolden Borough Municipal Code are unconstitutional on their face and as applied in violation of [MCOC Act], as well as a declaration that the Ordinances were unconstitutionally enforced and applied against Plaintiff Rahman;

b. A declaration that the [MCOC Act] pre-empts and invalidates the Glenolden Borough's municipal code with respect to occupancy permits, as well as the occupancy permit provisions of any municipality's code or ordinance that are not coextensive with [MCOC Act] or do not incorporate or otherwise comply with [MCOC Act's] protections and restrictions;

c. A temporary restraining order, preliminary injunction and permanent injunction restraining Glenolden Borough and any officers, agents, employees, representatives, and all other persons acting by, through or for it, from enforcing, applying and/or implementing Chapter 61 of the Glenolden Borough Municipal Code;

d. A temporary restraining order, preliminary injunction and permanent injunction enjoining the enforcement by any municipality its code or ordinances that are not co-extensive with [MCOC Act] or do not otherwise incorporate [MCOC Act's] protections and restrictions;

e. A temporary restraining and/or injunction dismissing or enjoining any further proceedings in Magisterial Justice court MJ-32232-NT-0000189-2019, absent further order of this Court;

f. An award of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, and

g.      Award of punitive damages.

h.      An award of all such other and further relief as the Court may determine is appropriate, just and proper.

(Amended Complaint page 29 – 30 (Plaintiffs' Prayer for Relief).)

Defendants move to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs do not plausibly state a claim upon which relief could be granted.  (Motion to Dismiss, ECF No. 35.)  Throughout their motion to dismiss, Defendants attack each count of the Amended Complaint as failing to state a claim for relief. (*Id.*)  Defendants' motion to dismiss also attacks the standing of SRA to bring this lawsuit.  (*Id.* page 9.)  They also raise the affirmative defense of immunity to block suit against each individual Defendant in their personal capacities.  (*Id.* page 23.)

## II.     **LEGAL STANDARD**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

III. **DISCUSSION**

A. **Standing of Suburban Realtors Alliance**

This Court finds that Plaintiff, Suburban Realtors Alliance (hereinafter SRA), failed to adequately plead facts to support its contention that it maintains standing to pursue litigation to enjoin, set aside, or seek damages as a result of the enforcement of Chapter 61. Defendants

contend that SRA lacks Article III standing because it failed to identify a member who has suffered an injury as a result of the application of Chapter 61.  Plaintiffs respond by arguing that members are realtors who suffered an impairment to their ability to represent clients in real estate transactions, which adversely impacted the ability to collect commissions.  (Opp. page 10, ECF No. 42.)  However, in the Amended Complaint, SRA fails to identify any member who suffered a concrete and palpable injury.

For standing to exist, an actual case in controversy must be before the court.  U.S. Constitution Art. III § 2.  This has been interpreted to mean that a plaintiff must personally have: (1) suffered some actual or threatened injury; (2) the injury must be fairly traced to some challenged action of the defendant; and (3) the injury must be likely to be redressed by a favorable decision.  *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). Notably, a plaintiff will not have standing when all it claims is that it has an interest or has suffered an injury that is shared by all members of the public.  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974) ("[S]tanding to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public because of the necessarily abstract nature of the injury all citizens share.").

An organization may sue to redress injuries to itself.  *Realty Co. v. Coleman*, 455 U.S. 363, 378-379 (1982).  However, while organizations do not have standing as such to represent their particular concept of public interest, such organizations have been permitted to assert the rights of their members.  *Pa. Prison Soc'y v. Cortes,* 508 F.3d 156, 163 (3rd Cir. 2007).  In *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977), the Supreme Court discussed the fact that an association has a right to bring a lawsuit on behalf of its members when the association itself has not suffered a direct injury.  The *Hunt* Court stated that in order to

demonstrate standing an association must show: "(1) its members would otherwise have standing to sue in their own right; (2) the interest it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members of the organization." *Id.* at 342.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561(1992), the Supreme Court further clarified the injury in fact requirement:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result the action of some independent third party not before the Court.

Requiring a "personal stake" in the dispute ensures the "concrete adverseness which sharpens the presentation of issues upon which the court[s] so largely depend[] for illumination of difficult constitutional questions. *Baker v. Carr*, 369 U.S. 186, 204 (1962). Therefore, an association bringing suit need only allege that one or more of its members has suffered a concrete and particularized injury that is actual and imminent, fairly traceable to the defendants, and redressable by the relief sought. *Finkelman v. Nat'l Football League, 810 F.3d 187, 193 (3d Cir. 2016)*; *see also Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015); *Nationwide Ins. Indep Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 63 (3d Cir. 2013).

SRA has not adequately alleged an injury in fact to one of its members to properly invoke Article III standing. More specifically, SRA has failed to plead how Chapter 61 has injured any one of its members. SRA alleged that its members were realtors and that their licenses to sell real estate were constitutionally infringed upon by the application of Chapter 61. (ECF No. 42, Opp. page 10, ECF No. 42.) In the Amended Complaint, SRA defines itself as:

[A] subsidiary corporation of Bucks County, Montgomery County and Suburban West Realtors Association . . . SRA together with its member entities, exists to advance and protect the interests of Realtors and their clients, whom they represent, in connection with the sale and purchase of real estate.

One such interest the SRA identified as requiring protection, on behalf of those it represents, is the uniform and standard application of local code provisions in connection with local municipalities, townships and boroughs of Pennsylvania in the issuance of use and occupancy permits upon the purchase and sale of real estate.

(Amended Complaint ¶ 4.)

The Amended Complaint further discusses the averred unconstitutional application of

Chapter 61 to members of SRA as follows:

The Ordinances of Glenolden Borough, as set forth herein, are unconstitutional, both facially and applied, in that they: (i) are pre-empted by the [MCOC Act], (ii) act to deprive Rahman and all other property owners in Glenolden Borough of their constitutional rights to due process and constitutionally protected property rights in their property in violation of their substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution and Article 1 § 1 of the Pennsylvania Constitution, (iii) unreasonably interfere with SRA's members constitutionally protected liberty and property interest relating to their licenses to sell real estate issued by the Commonwealth of Pennsylvania by imposing unconstitutional requirements on their customers, inhibiting sales and the free transfer of real estate, without any concomitant benefit to the municipality.

(*Id.* ¶ 71.)

The Amended Complaint goes on to state:

[T]he actions of Glenolden Borough and the Defendants reflect sustained abuse of power for multiple years over . . . the licensed professionals [who] rely upon the sale and purchase of property in Glenolden, which based upon their intentional disregard for MCOC Act dating back more than two years shocks the conscience.

(*Id.* ¶ 92.)

In this Court's view, the Amended Complaint is devoid of any facts which could

establish that a member of the SRA suffered a concrete injury with respect to the application of

Chapter 61. The Amended Complaint cites to the sale of a property located at 26 W. Knowles

Avenue and avers that Defendants enforced the mandates of Chapter 61 during the sale of that

property.  (*Id.* ¶ 29 – 33.)  The Amended Complaint goes on to aver that the sale of 26 W.

Knowles Avenue was delayed when Defendants refused to issue a use and occupancy permit.

(*Id.*)  However, the Amended Complaint also avers that the necessary permits were eventually

issued for that property.  (*Id.* 33.)  The Amended Complaint is devoid of an allegation that the

sale of 26 W. Knowles Avenue was blocked by the application of Chapter 61.  With specific

reference to the situation presented by Rahman, his property went to closing, and the sale was

completed with the requirement that he post a $5,000.00 bond which was later returned to

Rahman.  (*Id.* ¶ 44.)  The Amended Complaint also avers that Rahman owns an additional

property in the Borough of Glenolden.  (*Id.* ¶ 55.)  However, there is no indication that this

property was or is for sale or that Chapter 61 was applied to the sale of this property.

The pleadings do not establish that members of the SRA were unable to complete

transactions or that they were denied the ability to collect a commission.  In all instances cited in

the Amended Complaint, the necessary permits were issued so that the sale of the real property

could be finalized.  Chapter 61 had been the established law in the Borough of Glenolden prior to

the passage of the MCOC Act, and members of the SRA had been able to sell real estate and

draw commissions.  Without identifying members of their organization who suffered a common

injury or a financial impairment to the organization, SRA fails to establish standing to challenge

Chapter 61.  Moreover, SRA cannot proceed by asserting an injury on behalf of all persons who

own real estate within the Borough of Glenolden because an organization may not establish

standing based on a generalized injury to members of the general public.  *See Goode v. City of

Phila.*, 539 F.3d 311, 322 (2008) (holding taxpayers lacked standing to assert claims based upon

generalized injury that all persons in Philadelphia suffered); *see also Pennsylvania Prison Soc. v.

Cortes*, 508 F.3d 156, 164 (3d Cir. 2007) (holding voters and taxpayers lacked standing to assert

a generalized grievance of concerned citizens); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d at 118, 185-190 (2006) (holding homeowners lacked standing to assert generalized challenge to local zoning ordinance); *Pub. Interest Research Gr. of N.J. Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 120-121 (3d Cir. 1997) (holding plaintiffs lacked standing to assert generalized claim that they were injured by knowing that a creek was being polluted).

Accordingly, this Court holds that Plaintiff SRA has failed to plead concrete injury in fact under Article III for any of SRA's claims for relief and dismisses the claims brought by SRA. In addition, this Court will not allow further amendment of the Complaint to cure this defect because the Borough of Glenolden enacted ordinance No. 2131-2019, which amended Chapter 61 to bring it into compliance with the MCOC Act. In their Opposition to the Defendants' Motion to Dismiss, the Plaintiffs make what amounts to a facial challenge to the newly enacted Chapter 61 as amended by No. 2131-2019. They argue that the amended version of Chapter 61 unconstitutionally violates the MCOC Act. (Opp., ECF No. 42 page 27-30; Sur Reply in Opp., ECF No. 44 page 4-5.) However, Plaintiffs fail to establish that there are no circumstances under which the newly enacted Chapter 61 could be found constitutional.

In *U.S. v. Salerno*, 481 U.S. 739, 745 (1987), the Supreme Court stated that a facial challenge to a statute is "the most difficult challenge to mount successfully." To prevail on a facial challenge to the constitutionality of a statute, a litigant must satisfy the heavy burden of showing that "no set of circumstances exist[] under which the [a]ct would be valid." *Id.* It is not enough to show that an act "might operate unconstitutionally under some conceivable set of circumstances." *Id.* Facial challenges are "disfavored" because they (1) "raise the risk of premature interpretation of statutes on factually bare bone records," (2) "run contrary to the principle of judicial restraint," and (3) "threaten to short circuit the democratic process by

preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008).

When discussing a facial challenge to a zoning ordinance in the context of land use and taking without just compensation, the court in *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 258 (E.D. Pa. 2007), outlined the appropriate analysis for a facial challenge:

> Facial attacks on a zoning ordinance, on the other hand, do not implicate ripeness concerns or the fear of a federal court overstepping its jurisdiction into local matters. The finality rule does not apply "to *facial* attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes . . . a substantive violation of due process or equal protection. A 'final decision' is not necessary in that context because when a landowner makes a facial challenge he or she argues that *any* application of the regulation is unconstitutional . . ." [*County Concrete Corp. v. Twp. Of Roxbury*, 442 F.3d 159, 164 (2006).] In *County Concrete,* the Third Circuit held that when a plaintiff facially attacks an ordinance the cause of action is ripe, even if the plaintiff did not seek a variance from the zoning ordinance.

> In order to state a valid facial substantive due process claim, the plaintiff must assert that the ordinance "as a whole is arbitrary, capricious and unreasonable." *Id.* at 166. In other words, the plaintiff's claim must allege that "the enactment of a zoning ordinance, in and of itself, violates the Due Process Clause." *Id.*

*Id.* at 256.

## B.    Count I - Declaratory Judgment, 28 U.S.C. § 2201

In the Amended Complaint filed in October of 2019, the Plaintiffs seek to have Chapter 61 set aside and declared unconstitutional. However, the declaratory relief sought in the Amended Complaint is unnecessary because the Borough of Glenolden rewrote Chapter 61 when it enacted ordinance No. 2131-2019 in November of 2019. The previous version of Chapter 61 referred to in the Amended Complaint is no longer law; therefore, abrogating the need for a legal

determination that the previous version of Chapter 61 was unconstitutional.[2]  In their response to the Defendants' motion to dismiss, the Plaintiffs argue that the amended version of Chapter 61 that was enacted by ordinance No. 2131-2019 in November of 2019 is still unconstitutional and that it should, therefore, be set aside.  This specific request for relief appears nowhere in the amended complaint that was filed in October of 2019 prior to the new version of Chapter 61 becoming law.

As previously discussed, Plaintiffs' facial challenged to the newly enacted Chapter 61 fails because they cannot show that the newly enacted legislation is arbitrary, capricious and unreasonable.  (See above herein § V.A. Standing of SRA.)  Therefore, declaratory relief would be inappropriate.

### C.     Count II - Injunctive Relief

In Count II of the Amended Complaint, the Plaintiffs request that the state court criminal action be enjoined.  (Amended Complaint ¶¶ 74 – 81 (Count II).)  Based on the *Younger* abstention doctrine, this Court declines to intervene in the pending criminal action that has been brought against Rahman.  In this instance, all three prongs of the tripartite test espoused in *Younger* are satisfied, and the Plaintiffs have failed to plead facts to establish that the prosecution of Rahman was brought in bad faith or with the intent to harass.  They have failed to establish the existence of extraordinary circumstances necessary to warrant federal court intervention.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).[3]

---

[2]  As discussed below, based on the *Younger* abstention doctrine this Court will decline to declare the criminal prosecution of Rahman unconstitutional.  (See § C below herein)

[3]  Plaintiffs also move to enjoin further enforcement of Chapter 61 as amended.  They argue that it should be set aside.  However, they fail to plead that Chapter 61 as amended has been applied in any set of circumstances, or that it has blocked Rahman from selling any property that he still owns in Glenolden Township.  Therefore, there is no reason for this court to enjoin the enforcement of Chapter 61 as

The *Younger* abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Gwynedd Props., Inc., v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992). Under the doctrine, "federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010).

For the *Younger* abstention doctrine to apply, three conditions must be satisfied: (1) state-court proceedings must be ongoing and judicial in nature; (2) the state-court proceedings must implicate important state interests; and (3) those proceedings must afford an adequate opportunity to raise federal claims. *See Lazaridis v. Wehmer,* 591 F.3d 666, 670 (3d Cir. 2010). If all three prongs of the *Younger* analysis are met, federal courts should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 423 (1982).

The tripartite test espoused in *Younger* has been fulfilled in this instance. There is no question that a criminal state court proceeding in Magisterial District Court has been instituted against Rahman. (*Commonwealth of Pa. v. Rahman*, MJ-32242-NT-0000189-2019 through MJ-32242-NT-0000193-2019.) This proceeding also implicates important state interests. Specifically, it implicates the interest of the local government to manage the use and maintenance of the land within its boundaries. The proceeding in Magisterial District Court also provides Rahman with procedural and substantive due process protections. Presumably, Rahman will have an opportunity to present a defense and raise constitutional challenges to the enforcement of Chapter 61 in Magisterial District Court.

---

amended when there is no pending controversy. Hypothetical interference does not warrant injunction. *See generally Younger v. Harris*, 401 U.S 37 (1971).

The mere fact that Rahman is subject to a criminal prosecution is insufficient to warrant issuance of an injunction even, assuming, arguendo, that Chapter 61 as applied to Rahman is found to be unconstitutional. In *Younger*, 401 U.S. at 46, the Court in dicta stated, "[F]ederal injunctions against state criminal statutes either in their entirety or with respect to their separate and district prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional." The Court further wrote, "[i]t is sufficient for purposes of the present case to hold, as we do, that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54.

In the Amended Complaint, Plaintiffs fail to plead facts to establish that an exception to the *Younger* abstention doctrine applies in this instance. Plaintiffs merely allege that, "Defendants know or should know that the enforcement of [Chapter 61] is likewise unconstitutional, but Defendants have nevertheless brought the criminal proceedings identified in the Criminal Citation in bad faith, for the purpose of harassing Rahman." (Amended Complaint ¶ 54.) These bald allegations do not establish, "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty. Ethics Comm.,* 457 U.S. at 435 (1982).

After review of the entire Amended Complaint, the only portion that could conceivably support the issuance of injunctive relief would be Count VII, in which Plaintiffs alleged that Glenolden Borough officials engaged in a conspiracy to deprive residents of their constitutional rights. (Amended Complaint ¶¶ 115-118) (Conspiracy by violation of both 42 U.S.C. § 1985 and Pennsylvania Common Law).) However, this portion of the Amended Complaint is woefully

deficient to survive a motion to dismiss, and, therefore, cannot support the issuance of a preliminary injunction. (See § H herein.)

The Plaintiffs shall have twenty (20) days to amend their complaint to plead facts to establish that the criminal prosecution of Rahman was motivated by bad faith and harassment or that some other exceptional circumstances exist that would warrant issuance of injunctive relief.

**D.**     **Count III - Violation of 42 U.S.C. § 1983**

Taken at face value, the Amended Complaint states a claim for violation of 42 U.S.C. § 1983. A plain reading of the Amended Complaint illustrates that Plaintiffs adequately averred a due process violation in the enforcement of Chapter 61. The analysis of a procedural due process claim involves a two-step approach. The first step requires determining whether a life, liberty or property interest exists which has been interfered with by the state; the second step requires determining whether the procedures attendant to the deprivation were constitutionally sufficient. *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 490 (1989). As a general rule, due process requires notice and an opportunity to be heard prior to the deprivation of a protected interest. *Matthews v. Eldridge*, 424 U.S. 319 (1976).

In discussing due process, the Third Circuit has written: "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). In order to successfully establish a *prima facie* case of a due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See Mulholland v. Gov't of Cnty. of Berks*, No. 10-5616, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012). Remedial procedures will be deemed constitutionally inadequate if

"they contain a defect so serious [as to] characterize the procedures as fundamentally unfair."
*See Leonard v. Owen J. Roberts Sch. Dist.*, No. 08-2016, 2009 WL 603160, at *4 (E.D. Pa. Mar.
5, 2009, *citing Daniels v. Williams*, 474 U.S. 327, 341 (1987). In other words, "the focus
in procedural due process claims is on the adequacy of the remedial procedure, and not on the
government's actual actions that allegedly deprived the individual of his liberty or property
interest." *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs.*, 871 F.Supp.2d 389, 397-98 (E.D. Pa.
2012).

Rahman avers that he was subject to the mandates of Chapter 61 in violation of the
MCOC Act. He further avers that this practice caused a deprivation of his interest in property
without due process of law. The Amended Complaint specifically states: "Glenolden Borough
and the Borough Officials' actions and conduct is wholly unchecked, with no right of appeal and
no mechanism to challenge the constitutionality of the ordinance or the enforcement of the
ordinances." (Amended Complaint ¶ 56 & 93.)

Construing the Amended Complaint in the light most favorable to Rahman, it is possible
to construe the MCOC Act as creating a property interest sufficient to survive the Defendants'
motion to dismiss. When discussing property interests, the Third Circuit Court has written: "One
alleging a property interest in a benefit protected by due process must go beyond showing an
unsubstantiated expectation of the benefit." *Carter v. City of Phila.*, 989 F.2d 117, 120 (3d Cir.
1993). "To have a property interest in a benefit, a person clearly must have more than an
abstract need or desire for it. He must have more than a unilateral expectation of it. He must,
instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564,
577 (1972). Such property interests are "created and their dimensions are defined by existing
rules or understandings that stem from an independent source such as state law." *Id.* A property

interest subject to protection by the due process clause results from a "legitimate claim of entitlement" created by an independent source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Carter*, 989 F.2d at 120.

In this case, the existence of a property right is an issue of state law, specifically the rights created by the MCOC Act. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990) (tow service owner's claim of property interest created by Oklahoma's wrecker statute was issue of state law).

### E.     Count IV - Preemption

In the Amended Complaint, Plaintiffs seek a declaration that Chapter 61 was preempted by the MCOC Act. However, as with the request for declaratory relief, the Amended Complaint fails to account for the fact that the Borough of Glenolden amended Chapter 61 when it enacted ordinance No. 2131-2019 in November of 2019. The previous version of Chapter 61 referred to in the Amended Complaint is no longer law; therefore, abrogating the need for a legal determination that the MCOC Act preempted Chapter 61.   This Court will not apply principles of preemption to Chapter 61 and declare it preempted by the MCOC Act. To the extent that Plaintiffs' seek to make a facial challenge to the newly enacted Chpater 61, this facial challenge fails for reasons previously discussed herein. (See above herein § V.A. Standing of SRA.)

### F.     Count V - Attorney's Fees

In appropriate circumstances, attorney's fees may be awarded under 42 U.S.C. § 1983. Since the Amended Complaint adequately pleads a right to relief under 42 U.S.C. § 1983, the Plaintiff's request for attorney's fees survives the pleading stage of this litigation.

### G.     Count VI – Interference with Contractual Relationships

The Amended Complaint fails to allege a valid claim for interference with contractual relations. In order to allege tortious interference with existing contractual relations, a plaintiff must plead the existence of a contractual relationship between the plaintiff and a third party; purposeful action on the part of a defendant to specifically harm the existing relationship; the absence of a privilege or justification on the part of the defendant; and the occasioning of legal damage as a result of the defendant's conduct. *Pilot Air Freight Corp. v. Target Logistics Servs.*, 2001 U.S. Dist. Lexis 12806, *5 (E.D. Pa. 2001) *citing Brokerage Concepts, Inc. v. U.S. Healthcare Inc.*, 140 F. 3d 494, 530 (3d Cir. 1998) (*citing Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1988).

Plaintiff, SRA, simply has failed to plead that any of its members were a party to a contract that was interfered with by the application of Chapter 61. To the extent that a contract could be construed from the allegations in the Amended Complaint, that contract would have involved the sale of real estate located at 26 W. Knowles Avenue and 419 W. South Avenue, Glenolden, Pennsylvania. In both instances, Glenolden Borough issued the necessary permits for the sale to be completed. With specific reference to the property owned by Rahman, the Amended Complaint establishes that the sale of the property was complete with Rahman placing a $5000.00 bond in escrow, which monies were later returned. There is no indication that Rahman's contract for the sale of his property was impeded in any fashion.

The facts as averred simply do not support a claim for interference with a contractual relationship, and that claim is dismissed.

**H.** **Count VII Conspiracy – Violations of 42 U.S.C. § 1985 & Pennsylvania Common Law**

In the Amended Compliant, Plaintiffs seek relief based on the theory that the Defendants conspired to deprive them of their constitutional substantive and procedural due process rights. (Amended Complaint ¶ 116.) However, Plaintiffs do not identify the provision of 42 U.S.C § 1985 that they are invoking. Therefore, this Court must speculate as to the nature of Plaintiffs' cause of action based on a theory of conspiracy. Section 1985 reads in relevant part:

> **(1) Preventing officer from performing duties.** If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

> **(2) Obstructing justice; intimidating party, witness, or juror.** If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

> **(3) Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully

entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

A plain reading of the Amended Complaint illustrates that Plaintiffs cannot be attempting to invoke either of the first two paragraphs of 42 U.S.C. § 1985. The facts as averred in the Amended Complaint simply do not involve a situation where an officer was prevented from performing official duties as defined under section 1985(1), or obstruction of justice as defined under section 1985(2). Therefore, the only conceivable section of 42 U.S.C § 1985 which could apply in this instance is section 1985(3). However, the Plaintiffs' claim fails because they have failed to plead facts to establish that they are members of a specific class that has been subject to discriminatory conduct. The Amended Complaint is devoid of allegations that are necessary to proceed under 42 U.S.C. § 1985(3).

In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court stated that an action under 42 U.S.C. § 1985(3) must be based on conduct motivated by some racial or perhaps otherwise class-based invidiously discriminatory animus. The Third Circuit has further defined this test and stated that a plaintiff must allege (1) "that the conspiracy was motivated by discriminatory animus against an identifiable class, and (2) that the discrimination against the identifiable class was invidious. *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (political discriminatory animus against a member of the republican party did not meet the definition of invidious discrimination against a defined class under section 1985(3)). *Carchman*

*v. Korman Corp.*, 594 F.2 354 (3d Cir.) (holding that a class composed of members of a tenant association in an apartment building did not constitute a protected class for purposes of 42 U.S.C. § 1985(3)).

The Plaintiffs state law conspiracy claims fail for similar a similar reason. The Plaintiffs simply failed to plead specific facts in support of the alleged conspiracy. Plaintiffs' conspiracy claims shall be dismissed.

## I.      Qualified Immunity & Absolute Immunity

The individual Defendants are entitled to qualified immunity in their personal capacities in relationship to the enforcement of Chapter 61. The facts as alleged do not establish that individual Defendants knowingly violated a clearly established constitutional right.

In determining whether qualified immunity applies, courts conduct a two-pronged inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, the court must determine "whether the facts that the plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson v. Callaham*, 555 U.S. 223, 232 (2009) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Spady*, 800 F.3d at 637 (*quoting Pearson*, 555 U.S. at 232). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gilles v.*

*Davis*, 427 F.3d 197 (2005). "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). In conducting this analysis, courts have the discretion to decide which of the two prongs should be addressed first based on the circumstances of the particular case. *Pearson*, 555 U.S. at 236.

Chapter 61 was the established law at the time it was allegedly applied to Rahman in the sale of 419 W. South Avenue. (Amended Complaint ¶ 39 – 40.) The Plaintiffs do not identify the Defendant who allegedly cited Rahman or who committed the alleged constitutional violation in the application of Chapter 61; rather, the Plaintiffs refer to the Defendants collectively as the Borough Officials. (*Id.* 39-47.) The reality of the situation is that the Borough Officials who were enforcing Chapter 61 were merely enforcing the established law within the Borough of Glenolden. Therefore, they cannot be found to have violate clearly established statutory or constitutional rights when applying the established law.

Chapter 61 is and was an ordinance of general applicability in the Borough of Glenolden. Chapter 61 applied equally to all homeowners within the boundaries of Glenolden and not exclusively to Rahman. Any decision to amend Chapter 61 through the enactment of an ordinance like ordinance No. 2131-2019 was legislative in nature and not administrative. Therefore, to the extent that any official in Glenolden Borough failed to propose or enact legislation to amend Chapter 61, that official would be entitled to absolute immunity.

In *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998), the Court stated, "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative action." *See generally Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (members of city council and mayor have absolute immunity from personal liability under 42 U.S.C. § 1983 when acting in their legislative capacity); *Aitchison v. Raffiani*, 708 F.2d 96 (3d Cir. 1983) (members of a municipal council

acting in a legislative capacity are absolutely immune in their personal capacity for suit for damages); *Carver v. Foster*, 102 F.2d 96, 100 (3d Cir. 1996) (such immunity applies to local officials for acts undertaken in legislative capacity; however, actions taken in an executive or administrative capacity are not entitled to absolute immunity).

J.  **Punitive Damages**

Plaintiffs' request for punitive damages must be stricken because, as previously stated, the Amended Complaint fails to establish a claim against the individual Defendants in their personal capacities.  In *South v. Wade*, 461 U.S. 30 (1983), the Supreme Court held that a Section 1983 plaintiff may recover punitive damages against an official in his or her personal capacity if the official acted with malicious or evil intent or in callous disregard of the Plaintiff's federally protected rights.  However, in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the Supreme Court held that punitive damages cannot be awarded against a municipal entity.  The Court found that municipal entities are immune from punitive damages under Section 1983.

IV.  **CONCLUSION**

For these reasons, this Court grants in part and denies in part Defendants' motion to dismiss and an appropriate order will follow.

By the Court:

   /s/ John Milton Younge
Judge John M. Younge